JONATHAN E. NUECHTERLEIN
General Counsel
GREGORY A. ASHE
BRIAN S. SHULL
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-3719 (Ashe)
Telephone: 202 -326-3720 (Shull)
Facsimile: 202-326-3768
Email: gashe@ftc.gov, bshull@ftc.gov

DANIEL G. BOGDEN
United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, | **Case No. 2:15-cv-01512-JCM-CWH** |
| Plaintiff, | **FEDERAL TRADE** |
| v. | **COMMISSION'S OPPOSITION TO DEFENDANT JASON KOTZKER'S MOTION TO STAY** |
| **SEQUOIA ONE, LLC**, *et al.*, | **PROCEEDINGS PENDING RESOLUTION OF CRIMINAL** |
| Defendants. | **PROCEEDINGS** |

Plaintiff Federal Trade Commission ("FTC"), by its attorneys, respectfully submits this memorandum of points and authorities in opposition to Defendant Jason Kotzker's motion to stay proceedings pending resolution of criminal proceedings (Dkt. No. 22) ("Motion to Stay").

1

**INTRODUCTION**

2      The FTC initiated this civil enforcement action alleging that Kotzker and his co-

3   defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45, by engaging in unfair practices.

4   As alleged in the Complaint, Defendants sold sensitive personal and financial information

5   gathered from consumer payday loan applications to non-lenders who had no legitimate need for

6   the information.  Kotzker and his co-defendants continued this practice even though they had

7   numerous indicators that the non-lenders were using consumers' sensitive information to debit

8   consumers bank accounts without the consumers' knowledge or consent.  As a result of their

9   practices, Defendants caused millions of dollars in injury to consumers.

10      Kotzker's activities have apparently caught the eye of criminal law enforcement

11   authorities and he believes he is the subject of a criminal investigation.  He requests the Court

12   stay this proceeding pending the resolution of that investigation and "any other later

13   proceedings" because he may have to invoke his Fifth Amendment right against self-

14   incrimination.  (Def.'s Mem. Points and Authorities ("Def. Memo") [Dkt. No. 22] at 7.)

15      Although Kotzker has a right to invoke the Fifth Amendment in this proceeding if he

16   feels it necessary, he does not have a right to a stay of this proceeding.  Courts regularly reject

17   requests for stays where, as here, the defendant has not been criminally indicted and the

18   requested stay is an open-ended one that could last for years.  The possibility that Kotzker may

19   want to assert the Fifth Amendment in this proceeding is not enough to overcome the prejudice

20   such a stay would have on the FTC, the public, the consumer victims, and the judicial system.

21   Indeed, analyzing the factors identified by the Ninth Circuit in *Keating v. Office of Thrift*

22   *Supervision*, 45 F.3d 322 (9th Cir. 1995), demonstrates that Kotzker's motion to stay should be

23   denied.

24

**ARGUMENT**

25      Although it is within a district court's power to stay a civil action pending a criminal

26   proceeding, "such action is not required by the Constitution."  *FSLIC v. Molinaro*, 889 F.2d 899,

27

902 (9th Cir. 1989); *Keating*, 45 F.3d at 324 ("The Constitution does not ordinarily require a stay of civil proceedings pending the outcome of criminal proceedings.").  Instead, a court should consider "the particular circumstances and competing interests involved in the case."  *Molinaro*, 889 F.2d at 902.

The Ninth Circuit has identified several interests a court should consider in determining whether to grant a stay.  A court "should consider the extent to which the defendant's Fifth Amendment rights are implicated."  *Id*.  In addition, a court should consider:  "(1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation."  *Keating*, 45 F.3d at 324-25.

Kotzker, as the proponent of the stay, "bears the burden of establishing its need."  *Doe v. City of San Diego*, 2012 WL 6115663, at *1 (S.D. Cal. Dec. 10, 2012).  He has failed to meet this burden.  As explained below, the extent to which his Fifth Amendment rights are implicated is unclear and speculative.  Further, each of the additional *Keating* factors weighs against granting a stay in this action.

I.      **The Extent to which Kotzker's Fifth Amendment Rights Are Implicated Is Speculative and Kotzker Should Bear the Consequences of Asserting those Rights in this Proceeding.**

As noted, Kotzker has not been indicted, nor does Kotzker point to anything in his motion that suggests his indictment is imminent.  To the contrary, the last interaction with criminal law enforcement authorities mentioned in his motion was in January 2015, approximately nine months ago.  (Def. Memo at 3.)  Without an indictment pending against him, the extent to which his Fifth Amendment rights may be implicated in this civil proceeding is speculative and unclear.  Indeed, as the Ninth Circuit has explained, "[t]he case for staying civil

proceedings is weak when no indictment has been returned." *SEC v. Global Express Capital Real Estate Inv. Fund*, 289 Fed. Appx. 183, 191 (9th Cir. 2008).

Kotzker's arguments do not bolster this "weak" case for a stay. He argues that because he may want to assert his Fifth Amendment right in this action, he "will be unable to defend himself in any meaningful fashion." (Def. Memo at 5.) However, courts in this circuit have made it clear that the Constitution does not protect Kotzker "from being forced to choose between the consequences of asserting or waiving his Fifth Amendment rights" in a civil proceeding. *Grimes v. Knife River Constr.*, 2014 WL 1883812, at *2 (E.D. Cal. May 12, 2014).

Further, Kotzker overstates the extent to which his Fifth Amendment rights may hinder his defense in this case. The assertion of the Fifth Amendment must be made "on a question-by-question basis." *Doe v. Glanzer*, 232 F.3d 1258, 1263 (9th Cir. 2000). As a result, Kotzker "will be able to participate to some degree in the discovery process." *Doe*, 2012 WL 6115663, at *4. Moreover, even if asserting the Fifth Amendment may make it more difficult for Kotzker in this action, this is not enough to compel a stay, particularly when the other relevant interests are considered. *See Molinaro*, 889 F.2d at 903 ("The possibility that criminal indictments would be brought against Molinaro may have made responding to civil charges more difficult for him, but the court did not abuse its discretion by deciding that this difficulty did not outweigh the other interests involved.").

Indeed, Kotzker's request for a stay here is no small thing. Where there has been no indictment, stays of civil proceedings pending the resolution of a criminal investigation "could easily last as long as the five- or six-year limitations period in the criminal cases, or even longer if the government initiates criminal prosecutions shortly before the end of that period." *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr.*, 490 F.3d 718, 724 (9th Cir. 2007); *see also Sanrio, Inc. v. Ronnie Home Textile Inc.*, 2015 WL 1062035, at *3 (C.D. Cal. March 10, 2015) ("A stay for an 'indeterminate period' is more likely to cause prejudice to the plaintiff."). As explained below, Kotzker's request, if granted, would prejudice the FTC, the court system,

the consumer victims of his actions, and the public.  When he has not been indicted (and may never be indicted), Kotzker's "fears regarding asserting his Fifth Amendment privilege in the context of this civil enforcement action are simply too attenuated to justify entry of a stay given the weight of Plaintiff's (and the public's) countervailing interests."  *SEC v. Sandifur*, 2006 WL 1719920, at *2 (W.D. Wash. June 19, 2006).  To the extent Kotzker believes it is necessary to assert his right against self-incrimination, the consequences of asserting that right should be placed on Kotzker, not others.

## II.     The *Keating* Factors Weigh against Granting a Stay.

When balanced against the competing interests that would be prejudiced by a stay, Kotzker's speculative argument that his Fifth Amendment rights may be implicated by this civil proceeding fails.  As explained below, each of the factors identified by the Ninth Circuit in *Keating* weighs against granting Kotzker's motion to stay.

### A.     The Interests of the FTC Will Be Prejudiced by a Stay

A stay of this proceeding will negatively impact the FTC in several different ways and this factor therefore weighs against a stay.  First, the FTC has an interest in seeing the prompt enforcement of the statutes and rules that it has statutorily been tasked with enforcing.  *See SEC v. Loomis*, 2013 WL 4543939, at *3 (E.D. Cal. Aug. 27, 2013) (recognizing the SEC's interest "in enforcing securities laws as quickly as possible"); *United States v. Ogbazion*, 2012 WL 4364306, at *2 (S.D. Ohio Sep. 24, 2012) ("Conduct that Congress deems so offensive that it can be permanently enjoined inherently require[s] prompt civil enforcement which cannot await the outcome of a criminal investigation").  Kotzker argues that this interest will not be prejudiced because he is not currently engaged in the same conduct alleged in the Complaint.  (Def. Mem. at 6.)  However, there is nothing to stop him from starting up the same or similar practices, and enforcement of the FTC Act is therefore still vital.  *See FTC v. Sharp*, 782 F. Supp. 1445, 1454 (D. Nev. 1991) (explaining that the FTC Act authorizes the FTC to seek permanent injunctions even when the activity at issue has ceased if there is a "cognizable danger of recurrent

violation"). It would be "perverse" if the FTC were to receive "slower justice than other plaintiffs" simply because Kotzker's alleged behavior "is sufficiently egregious to have attracted the attention of the criminal authorities." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, 175 F. Supp. 2d 573, 575 (S.D.N.Y. 2001).

A second interest of the FTC is the need to proceed expeditiously to avoid destruction or loss of evidence. A delay in this action "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Blue Cross & Blue Shield of Ala.*, 490 F.3d at 724 (quoting *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002)). The Complaint in this action alleges illegal conduct starting in at least 2011. (Compl. ¶ 14.) A stay would hinder the FTC's ability to ensure that relevant evidence, not all of which is in the hands of the Defendants, is preserved. This is particularly vital for the evidence relating to the early years of the scheme, where destruction of evidence or memory loss is most likely.

Finally, Kotzker requests a stay of proceedings solely against himself. (Def. Mem. at 7.) This action will thus presumably proceed as to the corporate defendants, Sequoia One, LLC ("Sequoia One") and Gen X Marketing Group, LLC ("Gen X"), and the FTC will need to be able to prove its case against those entities. Kotzker, however, is the owner, member, and/or manger of Sequoia One and a manager of Gen X, and is a central player to the scheme alleged in the complaint. (*See* Compl. ¶ 8.) In order to pursue effectively and efficiently its action against the corporate entities, the FTC will undoubtedly need to seek discovery from Kotzker. *See Sandifur*, 2006 WL 1719920, at *3 (denying request for stay because, among other things, "a stay would force Plaintiff to forego discovery from a key participant"). Although Kotzker may assert his Fifth Amendment right as to some of this discovery, as noted above, it is likely his Fifth Amendment right will not be implicated as to every question asked of him.

### B.    There Are No Additional Burdens on Kotzker By Proceeding

This factor weighs against a stay when defendants "have not identified any legitimate burden that could result from this [a]ction proceeding, other than Defendants' 'Fifth Amendment

concerns.'" *Sanrio*, 2015 WL 1062035, at *3.  Other than his Fifth Amendment concerns, Kotzker has not identified any other burdens that proceeding with this action would place on him.  (Def. Mem. at 6.)  This factor, therefore, also weighs against granting his motion.

## C.    Judicial Efficiency Weighs Against Granting the Stay

"Judicial efficiency also weighs against issuing a stay since the district court 'ha[s] an interest in clearing its docket.'"  *Christian v. Rutkowski*, 2015 WL 5456600, at *2 (C.D. Cal. Sept. 17, 2015) (quoting *Molinaro*, 889 F.2d at 903)).  The burden on the court is particularly pronounced here where there is no indictment and the request is for an indefinite stay that may last for years.  *See Sanrio*, 2015 WL 1062035, at *4.

Further, as noted, Kotzker requests a stay only as to himself and the case would likely therefore proceed as to the corporate Defendants.  If a stay is granted, "the court will have essentially bifurcated the action, resulting in a duplication of its efforts to resolve it."  *Grimes*, 2014 WL 1883812, at *4.  "This *de facto* bifurcation will have an impact on the witnesses for both plaintiff and defendants, as they might be subject to two rounds of discovery and two trials."  *Id*.

Kotzker argues that because this case is in its early stages, a stay is warranted and cites to *Taylor, Bean & Whitaker Mortgage Corporation v. Triduanium Financial*, 2009 WL 2136986 (E.D. Cal. 2009) in support.  (Def. Mem. at 6.)  Yet the facts underlying that decision are meaningfully different from this case.  As an initial matter, the stay requested in *Taylor, Bean & Whitaker* was of the entire action, not of one individual defendant.  *Id*. at *1.  In addition, the request in that action was not for an indefinite stay, as here, but for a stay of mere months.  *Id*. Further, perhaps the largest difference between that case and the present case is that, in *Taylor, Bean & Whitaker*, two of the named defendants had already been indicted.  *Id*.  The court was therefore able to conclude that allowing the criminal matter to proceed first would promote efficiency because common issues of fact could be resolved in the criminal matter.  *Id*. at *4.  In

this case, neither Kotzker (nor any other defendant) has been indicted and any purported efficiency in letting a criminal proceeding go first is purely speculative.

### D.    The Interests of Non-Parties Will Be Prejudiced by a Stay

The victims of the scheme engaged in by Kotzker and his co-Defendants also have an interest in seeing this matter proceed expeditiously.  As alleged in the Complaint, Kotzker's actions led to over $7 million in injury to consumers.  (Compl. ¶ 24.)  The FTC seeks restitution for these victims to the extent possible and practicable.  (*See id*. ¶ 37.)  A delay in this action would also be a delay in providing redress to the consumer victims.

In addition, because of their inability to pay, the FTC was only able to receive $15,000 from the three individual defendants who have settled this action.  (*See* Final Orders for Permanent Injunction and Settlement of Claims [Dkt. Nos. 11, 13].)  That leaves a large gap remaining between the consumer injury here and the available money for restitution to consumers.  A delay of this proceeding would permit Kotzker to continue to spend money that is not rightfully his and dissipate assets that should properly be part of the consumer restitution pot or, at the very least, disgorged as ill-gotten gains.

Kotzker argues that a stay would benefit non-parties because it would avoid "wasteful depositions and discovery from non-parties, when the resolution of the criminal proceeding could have a direct impact on issues in the civil action."  (Def. Memo at 7.)  As explained above, however, because there is no indictment against Kotzker, the scope of any criminal proceeding (and any purported efficiencies to be gained from letting the criminal matter proceed first) is purely speculative.  In addition, because the elements of a violation of Section 5 of the FTC Act differ from the elements of any crime, it is simply incorrect to suggest that granting a stay here will help to avoid depositions and discovery from non-parties.

### E.    The Interests of the Public Will Be Prejudiced by a Stay

The FTC brought this civil enforcement action to enforce a federal consumer protection law, the FTC Act.  "[B]ecause this is a civil enforcement action, the public also has a general

1   interest in the expeditious resolution of this case." *Sandifur*, 2006 WL 1719920, at *3.  The

2   public has an interest in deterring future violations of the law and in ensuring that the

3   marketplace is free from deceptive and unfair practices, against which the FTC Act protects.  *See*

4   *id.*; *see also SEC v. Secure Inv. Servs.*, 2009 WL 982010, at *3 (E.D. Cal. April 10, 2009) ("The

5   public at large also has an interest in the prompt resolution of cases involving violations of the

6   Securities and Exchange Act.").

7          Kotzker argues that the "interest of the public favors a stay because 'the public's interest

8   in the integrity of the criminal case is entitled to precedence over the civil litigant.'"  (Def.

9   Memo at 7 (quoting *Javier H. v. Garcia-Botello*, 218 F.R.D. 72, 75 (W.D.N.Y. 2003)).)  In the

10  *Javier H.* case cited by Kotzker, however, several of the individual defendants in the civil case

11  were indicted.  *Javier H.*, 218 F.R.D at 73.  As a result, the criminal prosecutors requested a

12  limited stay of the civil action, over the defendants' objections, in order to avoid permitting the

13  defendants from circumventing criminal discovery rules through the civil case.  *Id.* at 73-75.  It

14  was this possibility that led the court to conclude that proceeding with the civil action could

15  "prejudice" the criminal proceeding.  *Id.* at 74-75.  No such facts are present here.  Because there

16  is no indictment (and thus no criminal case), the public's interest in protecting the integrity of the

17  criminal process is minimally implicated at best.

## CONCLUSION

19         For the foregoing reasons, the FTC respectfully requests the Court deny Kotzker's

20  Motion to Stay.

21

22

23

24

25

26

27

1

Dated: October 15, 2015                  Respectfully submitted,

2

JONATHAN E. NUECHTERLEIN
General Counsel

3

4

*/s/Gregory A. Ashe*
GREGORY A. ASHE

5

BRIAN SHULL

6

Federal Trade Commission
600 Pennsylvania Avenue NW

7

Washington, DC 20850
Telephone: 202-326-3719 (Ashe)

8

Telephone: 202 -326-3720 (Shull)
Facsimile: 202-326-3768

9

Email: gashe@ftc.gov, bshull@ftc.gov

10

DANIEL G. BOGDEN

11

United States Attorney
BLAINE T. WELSH

12

Assistant United States Attorney
Nevada Bar No. 4790

13

333 Las Vegas Blvd. South, Suite 5000

14

Las Vegas, Nevada 89101
Telephone: (702) 388-6336

15

Facsimile: (702) 388-6787

16

Attorneys for Plaintiff

17

FEDERAL TRADE COMMISSION

18

19

**CERTIFICATE OF SERVICE**

20

The undersigned hereby certifies that on O c t o b e r   1 5 ,   2015, a true and

21

correct copy of the foregoing was filed electronically with the United States District Court
for the District of Nevada using the CM/ECF system, which sent notification to all parties of

22

interest participating in the CM/ECF system.

23

*/s/Gregory A. Ashe*

24

Attorney for Plaintiff Federal Trade Commission

25

26

27